UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF NANOPYXIS CO., LTD., <br><br> Applicant. | Case No. 4:17-mc-80151-KAW <br><br> **ORDER DENYING THE MOTION TO QUASH THE SUBPOENA** <br><br> Re: Dkt. No. 10 |

On December 20, 2017, the undersigned granted NanoPyxis Co., Ltd.'s *ex parte* application for an order granting leave to obtain discovery for use in a foreign proceeding, pursuant to 28 U.S.C. § 1782. (Dkt. No. 6.)

On January 4, 2018, Objector and non-party C3Nano, Inc. filed a motion to quash the subpoena. (Dkt. No. 10.)

Upon review of the moving papers, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below, DENIES the motion to quash the subpoena.

## I. BACKGROUND

Founded in 2010, NanoPyxis manufactures silver nanowires and silver nanowire ink products, which are considered a promising replacement for indium tin oxide (ITO), the compound currently used for display panels such as LCDs, flexible displays, and OLEDs. (*See* Compl. in Korean proceeding, "Korean Compl.," Decl. of Gibong Jeong, "Jeong Decl.," Dkt. No. 2, Ex. A at 3.). NanoPyxis invested $10.8 billion won (USD $6 million) in its technology, including $2.4 billion won (USD $2 million) in government subsidies. *Id.*

NanoPyxis had successfully commercialized its technology and was thriving when it

allegedly discovered that its former chief technology officer Won-Jong Choi ("Choi") had stolen its trade secrets, formed a competing company (Aiden Co.), which he then sold to C3Nano US, a company that NanoPyxis had once considered a potential business partner. *Id.* at 5-8. Choi, who signed a confidentiality agreement when he started working at NanoPyxis in July 2010, was responsible for the research and the development of the silver nanowire technology. *Id.* at 4. As Chief Technology Officer, Choi had full access to all of the technical information needed to manufacture silver nanowire, including required production equipment, raw materials and composition ratios, controlled factors in the synthesis and purification processes, and customer and market information. *Id.* at 5.

In 2012, Choi formed Aiden Co. with a former colleague Lee Jin-Hang ("Lee"). *Id.* Choi continued to work for NanoPyxis while allegedly stealing its trade secrets and sharing those trade secrets with Lee and other defendants in the Korean action (Wang Tae-Joon, Lee Ki-Hoon, Kang Ji-Yoon). (Korean Compl. at 5.) Shortly thereafter, Aiden Corporation started directly competing with NanoPyxis, selling nearly identical silver nanowire products. *Id.* at 5-6.

At the end of 2013, NanoPyxis started negotiations with C3Nano US for a business partnership, sending silver nanowire samples to C3Nano US over the course of eight to nine months. *Id.* at 7. Choi disclosed the negotiation details to Aiden Co., who started negotiating with C3Nano US in secret. *Id.* at 8. After C3Nano US acquired Aiden Co. in April 2015, Choi resigned and started openly working for Aiden Corporation, which was renamed C3 Nano Korea. *Id.*

The sale of Aiden Co. and its stolen silver nanowire technology to a US corporation triggered an investigation by the Kyunggi South Regional Police's Industrial Technology Crimes Investigation Bureau. *Id.* at 8-9. Choi and his co-conspirators were later arrested and criminally charged. *Id.* at 9-10.

On April 26, 2017, NanoPyxis filed a civil trade secret misappropriation lawsuit in Seoul Central District Court. (*See* Jeong Decl. ¶ 2, Ex. A.) On July 10, 2017, the District Court entered a preliminary injunction barring C3 Nano Korea from using or revealing NanoPyxis's trade secrets relating to the production of silver nanowire technology. (Preliminary Injunction in Korean Proceeding, Jeong Decl. ¶ 3, Ex. B.) The preliminary injunction also prohibits C3 Nano Korea

1  from manufacturing, selling, supplying, lending, and/or exporting the silver nanowire or the raw
2  materials used to produce the silver nanowire. *See ids.*

3        The parties dispute whether the civil proceeding is stayed pending the resolution of the
4  preliminary injunction that is currently on appeal and the criminal proceeding. NanoPyxis
5  contends that neither the appellate nor the civil proceedings have been stayed. (Decl. of Gibong
6  Jeong ISO Opp'n to Mot. to Quash, "Jeong Opp'n Decl.," Dkt. No. 13-1 at ¶¶ 2-4.) C3Nano
7  claims that the civil case is stayed, although it is unclear from the translated civil docket entry.
8  (*See* 2d. Decl. of Hye-Sook Seo, "2d. Seo Decl.," Dkt. No. 14-1 ¶ 2 (the next hearing has not been
9  scheduled because the court is waiting "for other results").)

10        On January 4, 2018, C3Nano filed a motion to quash the subpoena. (Mot., Dkt. No. 10.)
11  On January 18, 2018, NanoPyxis filed an opposition. (Opp'n, Dkt. No. 13.) On January 25,
12  C3Nano filed a reply. (Reply, Dkt. No. 14.)

## II. LEGAL STANDARD

      Under 28 U.S.C. § 1782, a district court may order a person residing or found within its district to produce documents or testimony for use in a foreign legal proceeding, unless the disclosure would violate a legal privilege. 28 U.S.C. § 1782(a); *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246-47 (2004). The statute may be invoked where: (1) the discovery sought is from a person or entity residing in the district of the district court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an "interested person." *See In re Republic of Equador*, No. 10-mc-80225-CRB (EMC), 2010 WL 3702427, at \*2 (N.D. Cal. Sept. 15, 2010).

      A district court is not required to grant the application, but instead retains wide discretion to determine what discovery, if any, should be permitted. *See Intel*, 542 U.S. at 264; *see also Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002). In exercising that discretion, the court should consider the following non-exhaustive factors: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3)

1  whether the discovery request is an "attempt to circumvent proof-gathering restrictions or other

2  policies of a foreign country or the United States"; and (4) whether the discovery requested is

3  "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65 ("the *Intel* factors").

4  "The burden of persuasion in a motion to quash a subpoena issued in the course of civil

5  litigation is borne by the movant." *In re Ex Parte Apple Inc.*, No. 12-mc-80013-JW, 2012 WL

6  1570043, at *1 (N.D. Cal. May 2, 2012) (quoting *Green v. Baca*, 226 F.R.D. 624, 653-54 (C.D.

7  Cal. 2005) (citation omitted)).

### III. DISCUSSION

C3Nano contends that the subpoena should be quashed because the *Intel* factors disfavor permitting the production of documents and information sought in the subpoena. (Mot. at 6.) The Court will address the four discretionary factors below.

#### A. Whether C3Nano US should be considered a participant in the Korean Civil Proceedings.

The first *Intel* factor is whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. C3Nano argues that it should be considered a participant in the Korean proceedings, because its CEO, Clifford Morris, and C3 Nano Korea are named defendants. (Mot. at 6-7.) As such, C3Nano argues that the court in the Korean civil proceeding has jurisdiction over Mr. Morris and, therefore, also the ability to compel Morris, as CEO of C3Nano, to produce documents. (Mot. at 6; Reply at 3.) Furthermore, C3Nano argues that the information sought relates to the activities of C3 Nano Korea, which is subject to the Korean Tribunal. (Mot. at 7.)

Nanopyxis argues that C3Nano US is not a party to the Korean litigation, which is well taken, because it is not a party to the foreign proceeding. (*See* Opp'n at 5-6.) Further, Nanopyxis points out that "Morris does not claim to have all of C3 Nano US's documents and records in his possession, custody, or control, nor could he." *Id.* at 6. Even if Morris claimed to have all of C3Nano's documents in his possession, personal knowledge and corporate knowledge are different, as corporate knowledge includes the collective knowledge of all of its employees, agents, and counsel, including Morris, as well as information contained in its records. Even

4

1  though Morris is CEO, he is an individual and is not held to the same standard in discovery as a
2  corporate entity. Thus, the Korean court's jurisdiction over Morris is not tantamount to C3Nano
3  being a party to the foreign proceeding.

4  Additionally, the Court notes that Nanopyxis contends that C3 Nano Korea has been shut
5  down, its office and factory have been closed, and court mail sent to C3 Nano Korea has been
6  returned. (Jeong Decl. ¶ 5.) C3Nano US does not contest this characterization. As a result,
7  obtaining discovery from C3 Nano Korea is not viable, and the fact that the Korean court has
8  jurisdiction over it may practically be futile.

9  Accordingly, the Court finds that the first *Intel* factor weighs in favor of denying the
10  motion to quash.

### B. Whether the Korean Courts Would Reject U.S. Judicial Assistance.

The second *Intel* factor is whether "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 260.

C3Nano argues that "the NanoPyxis request is a type of request that is disfavored under Korean civil litigation and is not permitted absent court permission." (Mot. at 8.) C3Nano represents that "Court permission under the Korean Civil Procedure Act requires an application setting forth (1) the document requested; (2) the contents of the requested document; (3) the person possessing the document; (4) the fact to be proved by the document; and (5) the grounds upon which the document should be produced." (Mot. at 8.) C3Nano then falls back on its untenable argument that Nanopyxis has not made a request for the discovery to the Korean tribunal, despite the fact that Morris and C3 Nano Korea are parties to the foreign proceeding. *Id.*

In opposition, Nanopyxis argues that the Korean court would likely be receptive to the information requested, and that Korean tribunals have a long history of requesting and receiving U.S. judicial assistance. (Opp'n at 7-8 (citing cases in this district).)

The undersigned notes that the parties dispute whether the Korean civil proceeding is stayed in light of the pending appeal of the preliminary injunction, and it is undisputed that the criminal proceeding is ongoing. (Mot. at 8; Opp'n at 4.) The translated docket information

furnished by C3Nano is not dispositive, as courts frequently wait to schedule hearings, absent a stay, when there are other ongoing, related matters. (*See* 2d. Seo Decl. ¶ 2.) As the movant, C3Nano bears the burden of showing that the discovery requests would not be well received by the foreign tribunal, and it has not met its burden. This factor, therefore, weighs in favor of denying the motion to quash.

### C. Whether NanoPyxis is attempting to use the subpoena to circumvent the procedures of the Korean court.

The third *Intel* factor asks whether the discovery request is an "attempt to circumvent proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65. "A perception that an applicant has side-stepped less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013) (citing *In re Appl. of Caratube Int'l Oil Co.*, 730 F. Supp. 2d 101, 107-08 (D.D.C. 2010)). "Put differently, the § 1782 applicant's conduct in the foreign forum is not irrelevant." *In re Appl. of Gilead Pharmasset LLC*, 2015 WL 1903957, at *4 (D. Del. Apr. 14, 2015) (quoting *In re IPC Do Nordeste, LTDA*, 2012 WL 4448886, *9 (E.D. Mich. Sept. 25, 2012)).

Here, C3Nano contends that the subpoena is "an attempt to circumvent the general Korean civil litigation discovery procedures and to circumvent the stay of the civil proceedings the Korean courts have put in place pending resolution of fact issues in the criminal proceedings." (Mot. at 9.) As to the former argument, the undersigned is not persuaded that the discovery sought could be obtained utilizing the Korean civil discovery procedures, because the C3Nano is not a defendant in the foreign proceeding. *See* discussion, *supra,* Part III.A. Furthermore, the apparent shuttering of C3 Nano Korea likely makes discovery from that entity virtually impossible. *Id.*

In opposition, NanoPyxis argues that this factor is not applicable, because the Korean proceeding has not been fully stayed, as certain hearings are open pending the resolution of the criminal proceeding and NanoPyxis can submit evidence at any time. (Opp'n at 8 (citing Jeong Opp'n Decl. ¶¶ 2, 4).) In its reply, C3Nano provides that the Korean civil court's docket reflects that the civil proceeding is on hold pending the results of the injunctive and criminal cases. (Reply

at 5.) The September 13, 2017 docket entry translated by C3Nano, however, only provides that the next hearing has not been scheduled because the court is waiting "for the other case results." (2d. Seo Decl. ¶ 2.) This docket entry, therefore, does not indicate that the civil case is stayed.

Given that C3Nano is not a party to the foreign proceeding, the Court has no reason to believe that the subpoena is an attempt to undermine the Korean court's discovery procedures. Accordingly, the Court finds that the third *Intel* factor weighs in favor of denying the motion to quash the subpoena.

### D. Whether the subpoena is unduly intrusive and burdensome.

Under the fourth *Intel* factor, "requests become intrusive and burdensome where they are not narrowly tailored, request confidential information and appear to be a broad fishing expedition for irrelevant information." *In re: Ex Parte Application Varian Med. Sys. Int'l AG*, No. 16-MC-80048-MEJ, 2016 WL 1161568, at *5 (N.D. Cal. Mar. 24, 2016). Here, C3Nano argues that the subpoena is unduly intrusive and burdensome and creates issues of confidentiality and privilege. (Mot. at 9.)

#### i. Documents sufficient to show all of C3 Nano US's receipts of production equipment and/or silver nanowire raw materials from C3 Nano Korea from January 1, 2015 to the present.

C3Nano argues that "[t]his request seeks information that would include C3Nano US's highly proprietary production methods, equipment, materials, and sources of equipment and materials over a three year period." (Mot. at 10.) The time period of January 1, 2015 is reasonable and narrowly tailored, because C3Nano acquired Aiden Corporation in April 2015, and it is reasonable for the relevant time period to precede the date of acquisition.

C3Nano further argues that all of the information concerning what was shipped from C3Nano Korea to C3Nano U.S. is available in Korea, thereby rendering another production unnecessary. *Id.* The Court disagrees. To the extent that the information has already been produced, the Court is sure the parties can meet and confer to ensure that duplicate information is not furnished. If they cannot reach an agreement, C3Nano U.S. will have to produce all of its information to ensure that its production was complete. This is particularly important given that C3Nano Korea appears to no longer be in operation.

7

C3Nano also contends that there is no justification for allowing discovery that would also encompass non-relevant, highly confidential C3Nano US material. (Mot. at 10.) To the extent that C3Nano is concerned about protecting its confidential information, that concern can be ameliorated by entering into a stipulated protective order with NanoPyxis. The parties are directed to the Northern District's model protective order (available at: *https://cand.uscourts.gov/model-protective-orders*).

Accordingly, the first request is not unduly intrusive or burdensome.

> **ii. All documents that discuss or set forth terms related to any agreement or contract between C3 Nano Korea f.k.a. Aiden Co. and C3 Nano US, including but not limited to any agreement or contract itself, any deal binder or similar acquisition-related documents related to C3 Nano US's acquisition of C3 Nano Korea f.k.a. Aiden Co., and all communications in furtherance of such agreement or contract.**

C3Nano again argues that this request seeks information already available to the Korean courts, as C3Nano Korea (f.k.a. Aiden Co.) is a party to the contract that is the subject of the communications sought in this request. (Mot. at 10.) This argument is not persuasive, because it assumes that there were no communications that Aiden/C3Nano Korea was not a party to, despite the high likelihood of communications between C3Nano U.S. and Aiden prior to the acquisition. It also assumes that C3Nano Korea is in operation and is responding to discovery requests, which, assuming that NanoPyxis's representation is accurate, is not the case given that court mail has been returned to sender. (Jeong Decl. ¶ 5.)

Accordingly, the Court finds that the second document request is narrowly tailored and not unduly intrusive or burdensome.

> **iii. All communications between and among C3 Nano US, Lee Jin-Hang, Choi Won-Jong, Kang Ji-Yoon, Wang Tae-Joon, and/or Lee Ki-Hoon related to silver nanowire manufacturing and testing, silver nanowire production equipment and/or silver nanowire raw materials.**

C3Nano contends that this request also seeks information already available to the Korean courts, because the five individuals are parties to the Korean civil action and are former employees of C3Nano Korea. (Mot. at 11.) This fact, however, does not render this request duplicative, because it is possible that C3Nano US retained communications that the individuals did not.

8

The undersigned acknowledges that C3Nano's business is primarily silver nanowire ink manufacturing and processing, which could make compliance burdensome should there be "thousands of daily communications." (*See* Mot. at 11.) Thus, C3Nano may have to perform a Boolean search to comply with this request, and the parties are ordered to meet and confer regarding search terms and Boolean searches that would most likely yield relevant ESI documents. *Swanson v. ALZA Corp.*, No. 12-cv-04579-PJH-KAW, 2013 WL 5538908, at *4 (N.D. Cal. Oct. 7, 2013) (citing *POM Wonderful LLC v. The Coca-Cola Co.*, 2009 WL 7047720, at *1 (C.D. Cal. Nov. 10, 2009)). Accordingly, the parties are ordered to meet and confer regarding how to best conduct the discovery of electronically-stored information, and are directed to the Northern District's Guidelines for the Discovery of Electronically Stored Information (available at: *https://cand.uscourts.gov/eDiscoveryGuidelines*).

### iv. All documents and/or communications that discuss, relate to, or contain NanoPyxis' trade secret information, in whole or in part, directly or indirectly.

C3Nano argues that the fourth request suffers from overbreadth, because it utilizes the following phrases: "All documents and/or communications," "that discuss", "relate to," "or contain," "in whole or in part," and "directly or indirectly" are extremely broad and all-encompassing. (Mot. at 11.) The Court disagrees.

Second, C3Nano argues that the term "NanoPyxis trade secret information" is undefined. *Id.* This argument is unavailing. The Korean civil proceeding concerns whether NanoPyxis proprietary, technical information was allegedly taken by former CTO Choi and used by Aiden. If C3Nano has any documents or communications discussing this information or the purported information from Aiden, regardless of who developed it, it must be produced. Furthermore, as stated above, the undersigned finds that a stipulated protective order can adequately address C3Nano's concern regarding the protection of its confidential processes.

Based on the foregoing, the Court finds that the fourth *Intel* factor weighs in favor of denying the motion to quash the subpoena.

///

///

## IV. CONCLUSION

In light of the foregoing, the motion to quash the subpoena is DENIED. The parties are ordered to meet and confer regarding the production of electronically-stored information. C3Nano shall respond to the subpoena within 30 days of this order, absent stipulation of the parties or further order of the court.

Should the parties have any further disputes that they are unable to resolve informally, they shall follow the joint letter procedure outlined in the undersigned's standing order.

IT IS SO ORDERED.

Dated: March 5, 2018

KANDIS A. WESTMORE
United States Magistrate Judge